UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SCOTTSDALE SURPLUS LINES INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTRYTYME LAND, LLC, <br> MARK M. GRAHAM, and RICK HUGHES <br><br> Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, SCOTTSDALE SURPLUS LINES INSURANCE COMPANY ("Scottsdale"), complaining of Defendants, COUNTRYTYME LAND, LLC ("Countrytyme"), MARK M. GRAHAM ("Graham") and RICK HUGHES ("Hughes") (collectively, "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff Scottsdale is a corporation formed under the laws of the State of Arizona, with a principal place of business located in the Scottsdale, Arizona.

2. Defendant Countrytyme is a corporation formed under the laws of the State of Ohio, with its principal place of business located in Lancaster, Ohio.

3. Defendant Graham is a natural person, a principle of Countrytyme, and a resident of Lancaster, Ohio.

4. Defendant Hughes is a natural person, an employee of Countrytyme, and a resident of Lancaster, Ohio.

## JURISDICTION

5. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331(a)(1) and § 2201 (a), because Scottsdale and Defendants are residents of different states, and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Scottsdale and Defendants pursuant to Ohio Rev. Code § 2307.382(A)(1), (2) and (9) because all parties transact business in Ohio, contracted to supply services or goods in Ohio, and entered into a contract for insurance in Ohio.

7. Venue is appropriate pursuant to 28 U.S.C. 1391(b)(2), because a substantial part of the events giving rise to this dispute occurred within the Southern District of Ohio.

8. An actual and justiciable controversy exists between Scottsdale and Defendants with regard to their respective rights and obligations under an insurance policy issued by Scottsdale to Countrytyme (the "Scottsdale Policy").

9. The actual and justiciable controversy between Scottsdale and Defendants does not affect the rights of any other party or entity with respect to the Scottsdale Policy.

## OPERATIVE FACTS

10. On or about October 21, 2017, Scottsdale Surplus Lines Insurance Company issued a Commercial General Liability policy to Countrytyme Land LLC, and others, bearing Policy Number CPH0018679, for the policy period of October 21, 2017 to October 21, 2018 (the "Scottsdale Policy"). The relevant portions of the Scottsdale Policy are annexed hereto as Exhibit "A."

11. As described in greater detail below, the Scottsdale Policy provides coverage on an occurrence basis, for "bodily injury" and "property damage" caused by an "occurrence", only if

the "bodily injury" or "property damage" occurs on specific locations identified on the Schedule of Locations.

12. When the Scottsdale Policy was issued to Countrytyme, the address 5181 Symmes Road, Patriot, OH (the "Property") was listed as Designated Premises No. 3 on the Schedule of Locations.

13. Pursuant to Endorsement No. 5 to the Scottsdale Policy, effective April 30, 2018, 5181 Symmes Road, Patriot, OH was deleted from the Schedule of Locations.

14. On or about March 3, 2022, Plaintiffs Gerhard and Lyn Meyer, Amanda Schreiber and Kurtis Meyer, both individually and as the parents and natural guardians of Kaitlin Schreiber, Julia Schreiber, and Alex Meyer (collectively, the "*Meyer* Plaintiffs"), commenced an action in the Common Pleas Court of Fairfield County, Ohio, against Defendants Countrytyme Land LLC, Mark M. Graham, Rick Hughes, and "John/Jane Does 1-5", under Case NO. 22CV087 (the "*Meyer* Action"). The *Meyer* Action seeks damages arising out of the *Meyer* Plaintiffs' purchase of and residence at 5181 Symmes Road, Patriot, OH.

15. On or about June 1, 2022, the *Meyer* Plaintiffs served an Amended Complaint, a true and correct copy of which is annexed hereto as Exhibit "B".

16. The Amended Complaint asserts six counts against the Defendants, sounding in (1) Negligence, (2) Unjust Enrichment, (3) Breach of Fiduciary Relationship, (4) Fraudulent Misrepresentation, Nondisclosure or Concealment, (5) Breach of Implied Warranty, and (6) Punitive Damages.

17. The *Meyer* Plaintiffs allege that they were caused to suffer a variety of "bodily injury" and "property damage" as a result of the Defendants' intentional concealment of material information concerning hazardous conditions on the Property resulting from "previous mining

operations on the Property [that] made the Property unfit for residential or livestock use[,]" as well "water damage and dangerous mold."

18. Specifically, the *Meyer* Plaintiffs allege that during a December 20, 2017 tour of the Property, Defendant Hughes verbally disclosed that there had been previous mining activity on the Property, but that the mine had been fully reclaimed as of December 2016. (Amended Complaint, ¶ 15). The *Meyer* Plaintiffs claim that this representation was false, and assert that from at least 2012 through 2017, an active coal mine existed on the Property, and that rather than follow proper procedure to reclaim the mine, the Defendants merely "filled the open pit of the mine and planted grass to cover it up." (Amended Complaint, ¶ 15).

19. It is further alleged that the Defendants did so "as quickly and cheaply as possible, without regard for the legal requirements governing reclamation or the health and welfare of the public or the environment." (Amended Complaint, ¶ 15). The *Meyer* Plaintiffs claim that the Defendants "knew that the failure to properly reclaim the mine posed substantial dangers to humans, animals, and the environment[,]" (Amended Complaint, ¶ 29), and were in possession of "multiple notices of violations issued by ODNR describing toxin-contaminated water in unlined pits and ponds located on the Property…[and] documents detailing toxic substances in the Property's water and a lack of proper safety protocols, including for example, lining of the coal mining pit and nearby ponds to prevent soil and ground water contamination." (Amended Complaint, ¶ 29).

20. The *Meyer* Plaintiffs assert that the Defendants had a duty under Ohio law to disclose the material facts concerning the nature and condition of the Property, "including material defects in the property, [and] environmental contamination[.]" (Amended Complaint, ¶¶ 35-36), and that had the defects been properly disclosed, the *Meyer* Plaintiffs would not have purchased

the Property (Amended Complaint, ¶ 37). The *Meyer* Plaintiffs allege that "Defendants, despite having actual knowledge of the Property's material defects, failed to disclose and/or intentionally concealed the above-described material defects[,] [and did so] with the intent of misleading [the *Meyer* Plaintiffs] to rely upon Defendants." (Amended Complaint, at ¶ 38).

21. The *Meyer* Plaintiffs claim that on March 26, 2018, they purchased the Property from Countrytyme, and moved in that same day along with several family pets and horses. (Amended Complaint, ¶ 39). In reliance upon the Defendants' representations concerning the safe nature of the Property, "Plaintiffs allowed their horses to consume surface water on the Property." (Amended Complaint, ¶ 39).

22. It is further alleged that on April 15, 2018, the *Meyer* Plaintiffs found one of their horses seizing in the Property, and the horse later "died as a result of his exposure to the toxic water and land on the Property associated with the mining activity on the Property that was never reclaimed in accordance with ODNR requirements." (Amended Complaint, ¶ 40).

23. The *Meyer* Plaintiffs claim that from June 2018 through August 2018, three more horses died, and the *Meyer* Plaintiffs themselves began experiencing neurological symptoms. (Amended Complaint, ¶¶ 41-42).

24. It is alleged that from early 2019 to present, their conditions continued to worsen, and their infant child, born in December 2018, experienced significant developmental delays. (Amended Complaint, ¶ 43).

25. The *Meyer* Plaintiffs allege that by May 2020, they moved off the Property, and in May 2020, they were diagnosed with "extreme medical conditions and were told at that time that the medical conditions from which they were suffering was [*sic*] related to the toxic conditions existing on the Property." (Amended Complaint, ¶ 45). Plaintiffs allege that they "are still

experiencing significant health issues as a result of their exposure to environmental hazards on the Property…including consuming drinking water on the Property." (Amended Complaint, ¶ 45).

26. The *Meyer* Plaintiffs also assert that "during this time period, there were frequent events of subsidence and landslides on the Property[, which] Plaintiffs later learned [] occurred as a result of Countrytyme's shoddy job filling in the contaminated mine site." (Amended Complaint, ¶ 46).

## THE SCOTTSDALE POLICY

27. Scottsdale Surplus Lines Insurance Company issued a Commercial General Liability Policy to Named Insured, Countrytyme Land, LLC, bearing policy number CPH0018679, for the policy period of October 21, 2018 through October 21, 2019 (the "Scottsdale Policy").

28. The Scottsdale Policy carries a $1,000,000 per occurrence limit of liability, a $2,000,000 Products/Completed Operations Aggregate limit of liability, and a $2,000,000 General Aggregate limit of liability other than Products/Completed Operations.

29. The Scottsdale Policy incorporates policy form CG 21 44 04 17, entitled LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION, pursuant to which the Insuring Agreement of the Scottsdale Policy is amended to read, in relevant part:

> b. This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
>
> (1) The "bodily injury" or "property damage":
>
> (a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
>
> (b) Arises out of the project or operations shown in the schedule.

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

30. At the time the Scottsdale Policy was issued on or about October 21, 2017, the Scottsdale Policy contained policy form UTH-SP-3 (8-96), entitled SCHEDULE OF LOCATIONS, upon which 5181 Symmes Road, Patriot, OH was listed as Designated Premises No. 3.

31. On or about May 3, 2018, and at the request of Countrytyme, Scottsdale issued Endorsement No. 5 to the Scottsdale Policy pursuant to which 5181 Symmes Road, Patriot, OH was deleted from the SCHEDULE OF LOCATIONS, effective April 30, 2018.

32. The Scottsdale Policy also incorporates policy form CG 21 49 09 99, entitled TOTAL POLLUTION EXCLUSION ENDORSEMENT, pursuant to which the Pollution exclusion set forth at Section I.A.2.f. of the Scottsdale Policy is amended to read, in relevant part:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

      (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"

33. Exclusion a. of the Scottsdale Policy provides that the Scottsdale Policy does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

34. Exclusion j. of the Scottsdale Policy provides, in pertinent part, that coverage under the Scottsdale Policy does not apply to:

    j. Damage to Property

      "Property damage" to:

        (1) Premises you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

        (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

        \*     \*     \*     \*

        (5) That particular part of real property on which you or any contractors or contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises from those operations; or

        (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

35. The Scottsdale Policy also incorporates policy form UTS-74g (8-95), entitled PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION, which provides that the Scottsdale Policy "does not apply to a claim of or indemnification for punitive or exemplary damages.

8

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

36. The Scottsdale Policy also incorporates policy form CG 21 67 12 04, entitled FUNGI OR BACTERIA EXCLUSION, which provides, in pertinent part, that the Scottsdale Policy "does not apply to "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause event, material or product contributed concurrently or in any sequence to such injury or damage."

37. In connection with the FUNGI OR BACTERIA EXCLUSION, "fungi" is specifically defined to mean "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."

38. The Scottsdale Policy also incorporates policy form UTS-301g (11-05), entitled EARTH OR LAND MOVEMENT EXCLUSION, which provides, in pertinent part, that the Scottsdale Policy "does not apply to "bodily injury," "property damage," "personal and advertising injury" or "damages" caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land, regardless of: (1) the cause or source of such earth or land movement; (2) whether such earth or land movement arises from natural or man-made forces or causes; or (3) whether such earth or land movement occurs: a. independently of; b. as a result of; c. in concurrence or connection; or in any sequence associated with any other natural or man-made forces, causes, events or operations."

39. In connection with the EARTH OR LAND MOVEMENT EXCLUSION, earth or land movement is specifically defined to include "subsidence, settling, sinking, rising, slipping,

9

falling away, caving in, shifting, expanding, contracting, dissolving, eroding, mudflow, sliding, tilting of land or earth, earthquakes, volcanic eruption and weather."

40. The Scottsdale Policy also incorporates policy form GLS-100s, entitled EXCLUSION—CONTRACTORS AND SUBCONTRACTORS, which provides, in pertinent part, that:

> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of or caused by, in whole or in part:
>
> a. Operations performed for or on behalf of any insured by any contractor or subcontractor;
>
> b. Acts or omissions of any contractor or subcontractor in connection with a. above; or
>
> c. The negligent:
>
>  (1) Hiring;
>
>  (2) Investigation;
>
>  (3) Supervision;
>
>  (4) Training; or
>
>  (5) Retention
>
> of any contractor or subcontractor for whom any insured is or ever was legally responsible and whose operations, acts or omissions would be excluded by a. or b. above.
>
> This exclusion applies to all sums you become legally obligated to pay that arise out of any claims or "suits" by any person or organization for "bodily injury," "property damage," or "personal and advertising injury" and/or any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury," "property damage," or "personal and advertising injury."
>
> We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to a. b. or c. above.

10

41. Definition 13 of the Scottsdale Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

42. Definition 15 of the Scottsdale Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

43. Definition 17 of the Scottsdale Policy defines "property damage" to mean: a. Physical injury to tangible property, including all resulting loss of use of that property; or b. Loss of use of tangible property that is not physically injured.

44. Definition 22 of the Scottsdale Policy defines "your work" to mean "work or operations performed by you or on your behalf, and materials, parts, or equipment furnished in connection with such work or operations," and to include "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and the providing or failure to provide warnings or instructions."

**FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT:
NO OCCURRENCE ON A SCHEDULED LOCATION DURING THE POLICY PERIOD**

45. Scottsdale incorporates by reference the allegations set forth in Paragraphs 1 through 44 as if more fully set forth at length herein.

46. A genuine, actual, and justiciable controversy has arisen and presently exists between and among Scottsdale and Defendants concerning Scottsdale's duty to defend and indemnity Defendants for the *Meyer* Action.

47. This action is ripe for declaratory judgment because a final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy among them as

to Scottsdale's alleged obligation to defend and indemnify Defendants in connection with the *Meyer* Action.

48. Pursuant to the plain and unambiguous terms of the Scottsdale Policy, none of the claims, allegations or counts asserted in the Amended Complaint filed in the *Meyer* Action fall within the scope of coverage afforded under the Scottsdale Policy.

49. Under settled Ohio law, the *Meyer* Plaintiffs' allegations that Defendants intentionally and purposefully failed to disclose and/or concealed hazardous and defective conditions on the Property do not constitute an "occurrence", and therefore the Insuring Agreement of the Scottsdale Policy is not triggered.

50. Further, the Property was removed from the Schedule of Locations by Endorsement No. 5, effective April 30, 2018. Therefore, all claims for "bodily injury" or "property damage" occurring after April 30, 2018, do not fall within the scope of coverage afforded by the Scottsdale Policy because coverage under the Scottsdale Policy only applies to "bodily injury" or "property damage" that "occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises."

51. Accordingly, Scottsdale is entitled to a declaration that it owes no duty to defend or indemnify the Defendants in connection with the *Meyer* Action.

**SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT:
TOTAL POLLUTION AND OTHER EXCLUSIONS BAR COVERAGE**

52. Scottsdale incorporates by reference the allegations set forth in Paragraphs 1 through 51 as if more fully set forth at length herein.

53. A genuine, actual, and justiciable controversy has arisen and presently exists between and among Scottsdale and Defendants concerning Scottsdale's duty to defend and indemnity Defendants for the *Meyer* Action.

54. This action is ripe for declaratory judgment because a final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy among them as to Scottsdale's alleged obligation to defend and indemnify Defendants in connection with the *Meyer* Action.

55. The TOTAL POLLUTION EXCLUSION ENDORSEMENT incorporated into the Scottsdale Policy excludes from coverage "bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

56. The *Meyer* Plaintiffs' claims for "bodily injury" are excluded from coverage pursuant to the TOTAL POLLUTION EXCLUSION ENDORSEMENT, because to the extent the injuries allegedly suffered by the *Meyer* Plaintiffs occurred at a time where coverage under the Scottsdale Policy was applicable to the Property, the *Meyer* Plaintiffs' damages were caused by exposure to toxic water and land on the Property, and the toxic substances are alleged to have escaped from the coal mine and as a result of previous mining activities on the Property.

57. Because the *Meyer* Plaintiffs' claims for "bodily injury" were by their own assertion caused by exposure to "pollutants", there is no coverage under the Scottsdale Policy for the "bodily injury" claims, and Scottsdale therefore has no duty to defend or indemnify the Defendants against the *Meyer* Action.

58. The *Meyer* Plaintiffs' claims for "property damage" for loss of livestock are likewise excluded from coverage pursuant to the TOTAL POLLUTION EXCLUSION ENDORSEMENT, because to the extent the injuries allegedly suffered by the *Meyer* Plaintiffs' livestock occurred at a time where coverage under the Scottsdale Policy was applicable to the Property, the *Meyer* Plaintiffs' damages were caused by the livestock's exposure to toxic water

and land on the Property, and the toxic substances are alleged to have escaped from the coal mine and as a result of previous mining activities on the Property.

59. Because the *Meyer* Plaintiffs' alleged "property damage" for loss of livestock was by their own assertion caused by exposure to "pollutants", there is no coverage under the Scottsdale Policy for the "property damage" for loss of livestock claims, and Scottsdale therefore has no duty to defend or indemnify the Defendants against the *Meyer* Action.

60. Similarly, to the extent the *Meyer* Plaintiffs assert claims for "property damage" to the Property itself, and to the extent any such "property damage" occurred at a time when coverage under the Scottsdale Policy was applicable to the Property, all such claims are separately and independently excluded from coverage pursuant to the plain and unambiguous terms of Exclusions j.(1), (2), (5) and (6) [Damage to Property], the EXCLUSION—CONTRACTORS AND SUBCONTRACTORS form, the FUNGI OR BACTERIA EXCLUSION form, and the EARTH OR LAND MOVEMENT EXCLUSION form.

61. In particular, Exclusion j.(2) bars coverage for all of the "property damage" claims asserted in the *Meyer* Action. Exclusion j.(2) specifically provides that coverage under the Scottsdale Policy does not apply to "[p]remises you sell, give away or abandon, if the "property damage" arises out of any part of those premises." Because all of the "property damage" alleged by the *Meyer* Plaintiffs arises out of the Property, which Defendants sold to the *Meyer* Plaintiffs, all "property damage" claims arising out of the Property are barred from coverage pursuant to Exclusion j.(2).

62. Finally, the *Meyer* Plaintiffs' claims for punitive damages are both precluded from coverage pursuant to Ohio Revised Code Section 3937.182, and the PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION form.

63. Because each and every potential claim for "property damage" to the Property itself is plainly and unambiguously excluded by a distinct provision of the Scottsdale Policy, Scottsdale is entitled to a declaration that it has no duty to defend or indemnify the Defendants in connection with the *Meyer* Action.

**WHEREFORE**, Plaintiff SCOTTSDALE SURPLUS LINES INSURANCE COMPANY respectfully prays the Court as follows:

1. That a declaratory judgment be entered adjudging and declaring the relative rights of the parties to this action concerning the contractual rights of the Defendants, specifically declaring that Scottsdale has no duty to defend or indemnify the Defendants in connection with any aspect of the *Meyer* Action;

2. For all attorneys' fees and costs incurred by Scottsdale in this action;

3. For trial by jury on all issues so triable; and

4. For such other and further relief as the Court may deem just and proper.

This 21st day of November, 2022.

GOLDBERG SEGALLA LLP

By: *[signature: Michael Hamilton]*

Michael A. Hamilton, Esq.
Ohio Bar No. 91915
1700 Market Street, Suite 1418
Philadelphia, Pennsylvania 19103-3907
(267) 519-6833
mhamilton@goldbergsegalla.com
*Attorney for Plaintiff*